UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRUTYN, N.V.,

    Plaintiff,

  v.                                            Case No. 04-C-527

ANTHONY GAGLIANO, CO., INC.,

    Defendant.

**DECISION AND ORDER RE: ATTORNEY'S FEES, INTEREST, AND COSTS**

On July 2, 2007, this court issued its decision and order in this action, concluding, *inter alia*, that "based upon the language contained on its invoices, Brutyn is entitled to reasonable attorney's fees and interest with respect to those invoices where the court has found amounts owing to Brutyn from AGCI." (Dec. & Order at 37.) The court ordered that "within ten (10) days of the date of this order, the plaintiff shall file a memorandum in support of its computation of pre-judgment interest and reasonable attorney's fees." (Dec. & Order at 40.) Thereafter, the court granted the plaintiff's motion for an extension of time to file its memorandum, and on July 26, 2007, the plaintiff filed its memorandum in support of its claim for attorney's fees and its computation of prejudgment interest.

Regrettably, a review of the plaintiff's memorandum and exhibits filed in support of its request for attorney's fees reveals that, for all intents and purposes, the plaintiff elected to not follow the court's July 2, 2007 Order. Instead of setting forth the amount of time that plaintiff's counsel believes was reasonably spent performing legal work on those invoices where the court found amounts owing to Brutyn, as well as providing documents in support thereof, counsel simply

submitted to the court *all* of counsel's billing records reflecting every minute of time spent on this "dispute" since November of 2003, claiming that the plaintiff, as a "prevailing party," is entitled to all of its attorney's fees for a total award of $450,431.82 in attorney's fees. Perhaps counsel simply did not want to take the time to wade through all of the billing records to determine what amount of time was compensable and what amount of time was noncompensable under the court's order, i.e, what amount of time was spent litigating the amount owed on those invoices where the court found amounts owing to Brutyn (compensable), and what amount of time was spent litigating or investigating claims that the court either dismissed or with respect to which the court found against the plaintiff (noncompensable). Or perhaps counsel thought it was the court's responsibility to do the wading. However, it is not the court's responsibility to do so. *See In re Central Ice Cream Co.*, 836 F.2d 1068, 1074 (7th Cir. 1987). Furthermore, it is not the court's responsibility to wade through counsel's billing records to determine what amount of time was actually spent performing *legal* work and what amount of time was spent performing administrative and clerical tasks. Indeed, a review of Attorney Keijer's billing records reveals entries for time spent performing such tasks as, for example, exchanging e-mails with clients regarding hotel room arrangements during the trial and time spent retrieving and reviewing an e-ticket and a travel itinerary. Entries such as these do not reflect the performance of legal work and thus, would not in any event be compensable as such.

On August 6, 2007, the defendant filed its response to the plaintiff's submissions. Not surprisingly, given the plaintiff's submissions, defense counsel argues that this court should not award plaintiff's counsel *any* attorney's fees based upon the following grounds: (1) plaintiff's counsel willfully refused to comply with the court's July 2, 2007 Order, (2) the fee request is

2

outrageously unreasonable, and (3) based upon the plaintiff's submissions it is virtually impossible to determine a reasonable amount of attorney's fees to be awarded.

Although there is part of me that is tempted to follow the defendant's suggestion, I decline the defendant's invitation to do so. Rather, I will award what I believe to be reasonable attorney's fees for the amount of time spent by plaintiff's counsel preparing for trial, conducting the trial, and preparing the plaintiff's post-trial brief and reply brief. I will not award attorney's fees for counsel's work on other parts of the litigation/dispute because it is impossible for me to discern to any degree of certainty how much of the time spent by counsel on those activities is compensable and how much is noncompensable, i.e., how much time was spent in connection with claims that this court either dismissed or on which the court found against the plaintiff.[1] Furthermore, with respect to the entries of billable time whose narratives indicate that both legal work and nonlegal work was performed during such time, such entries will not be considered by the court. This is because it is impossible for me to determine how much time was spent on actual legal work and how much time was spent performing clerical or administrative tasks.

In calculating the amount of attorney's fees to be awarded, courts are to assign a "lodestar" amount, calculated by multiplying the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate. *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003). Once this amount is calculated, the district court may adjust the amount up or down to take into account various factors regarding the litigation. *Id.* These factors include: the time and

---

[1] On August 13, 2007, the plaintiff submitted a declaration signed by Attorney Keijer along with a one-page summary of Attorney Keijer's billing reports. However, neither of these documents remedies the shortcomings described above. Neither document makes any attempt to break down the billing records and identify with any degree of specificity how much time was spent on compensable activities as opposed to noncompensable activities.

3

labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *Mathur*, 317 F.3d at 742 n.1

Based upon my review of Attorney Clare Keijer's billing records, she spent a total of 76.25 hours performing pretrial preparation. This number reflects the entries for the following dates: January 9, 2007, January 10, 2007, January 14, 2007, January 16, 2007, January 18, 2007, January 21, 2007, January 22, 2007, January 23, 2007, January 24, 2007, January 25, 2007, January 26, 2007, and January 28, 2007. Ms. Keijer spent a total of 78 hours during the week of trial. This number reflects the entries for January 28, 2007 through February 3, 2007. Attorney Keijer spent a total of 93.5 hours performing work on the plaintiff's post-trial brief and reply brief. This number reflects the entries for the following dates: March 15, 2007, March 20, 2007, March 21, 2007, March 22, 2007, April 3, 2007 through April 13, 2007, May 14, 2007, May 16, 2007 through May 18, 2007, May 21, 2007, May 24, 2007, and May 29, 2007.

Ms. Keijer asserts that her hourly billing rate is $275 per hour. The defendant has not objected to this hourly rate as being unreasonable, and thus, the court accepts that this is a reasonable hourly rate. Such being the case, the lodestar amount of attorney's fees for Ms. Keijer is $68,131.25 (247.75 hours x $275).

Based upon my review of Attorney James Fredricks' billing records, he spent a total of 19 hours performing pretrial preparation. This number reflects the entries for the following dates:

4

January 9, 2007, January 16, 2007 through January 19, 2007, January 21, 2007 through January 25, 2007, and January 28, 2007. Attorney Fredricks spent a total of 46.4 hours during the week of trial. This number reflects the entries for January 29, 2007 through February 3, 2007. Attorney Fredricks spent a total of 2 hours performing work on the plaintiff's post-trial brief and reply brief. This number reflects the entries on the following dates: March 20, 2007, March 31, 2007, April 15, 2007, April 16, 2007, May 15, 2007, May 24, 2007, May 25, 2007, and May 30, 2007. Attorney Fredricks asserts that his hourly billing rate is $175 per hour. The defendant has not objected to this hourly rate as being unreasonable, and thus, the court accepts that this is a reasonable hourly rate. Such being the case, the lodestar amount of attorney's fees for Attorney Fredricks is $11,795 (67.4 hours x $175).

In sum, I conclude that the lodestar amount of attorney's fees in this action is as follows: $68,131.25 for Attorney Keijer (247.75 hours x $275) and $11,795 (67.4 hours x $175) for Attorney Fredricks.

This is not to say, however, that the lodestar amount of attorney's fees should be awarded. After all, the plaintiff did not prevail at trial on all of the invoices that were in dispute. And, because the legal work performed with respect to those invoices on which the plaintiff did not prevail is not readily severable from those invoices on which the plaintiff did prevail, a reduction of the lodestar amount is appropriate to reflect the plaintiff's failure to succeed entirely on its breach of contract claim. The Supreme Court made that clear in *Hensley v. Eckerhart* when it stated that the district court "may simply reduce the award to account for the limited success." 461 U.S. 424, 436-37 (1983). In my opinion, a thirty-five percent (35%) reduction in the lodestar amount reflects fairly the fact that the plaintiff prevailed on 17 out of the 26 invoices in dispute at trial (a sixty-five percent

success rate). This results in an award as follows: $44,285.31 ($68,131.25 x .65) for Attorney Keijer and $7,666.75 ($11,795 x .65) for Attorney Fredricks, for a total of $51,952.06.

Next, the court will address the matter of computing the appropriate amount of prejudgment interest. The first issue to address is the appropriate due date for each particular invoice on which the court found an amount still owing to Brutyn. The payment due date for each invoice is ten (10) days after the day on which the produce was accepted, pursuant to 7 CFR § 46.2(aa)(5) and (11) and as set forth on the plaintiff's submission. This is because, although there was testimony that the payment was due thirty (30) days after AGCI picked up the produce, such an agreement was never reduced to writing. The second issue to address is whether the interest should be compounded. Simply put, because compounded interest was not part of the agreement of the parties, the interest will not be compounded. Instead, the court will compute interest at the simple rate of 1.5% per month, or 18% per year. Third (and contrary to the suggestion of the defendant), the court will award interest for the entire time the case was pending up through the date of judgment. In light of all of the foregoing, and based upon my calculations, the total amount of prejudgment interest owed by AGCI to Brutyn is $47,396.75.

Finally, the court will not award any costs to the plaintiff. Although the following language appears on each of invoices that were in dispute in this action, "the purchase price for the goods sold on this invoice shall be increased to include . . . all attorney fees and *costs* incurred in collecting the amount due," there was no testimony presented at trial regarding to what the term "costs" refers. Thus, I am left to conclude that the term refers to allowable taxable costs pursuant to federal rule or statute (*See* Federal Rule of Civil Procedure 54 and Civil L.R. 54.1 and 54.2). After the court enters

6

Case 2:04-cv-00527-WEC   Filed 08/15/07   Page 6 of 7   Document 132

judgment the plaintiff may proceed pursuant to the aforementioned rules to recover its properly taxable costs.

There is one final matter to address. There are apparently several addition errors in the court's decision of July 2, 2007, including on page 25 thereof. In that particular instance, the total amount owed to Brutyn by AGCI on invoice #2003254 is **$3,356.15** not $1,064.88. In the end, when all corrections are made, the total amount due to Brutyn before prejudgment interest and attorney's fees is $66,044.16.

In conclusion, the total amount owed from AGCI to Brutyn is $165,392.97 ($66,044.16 on the invoices + $51,952.06 in attorney's fees + $47,396.75 in prejudgment interest.)

**NOW THEREFORE IT IS ORDERED** that judgment shall be entered in favor of plaintiff Brutyn, N.V. and against defendant Anthony Gagliano Company, Inc. in the amount of $165,392.97.

**SO ORDERED** this 15th day of August 2007, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge